**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ZURICH AMERICAN INSURANCE
COMPANY, as subrogee of Skanska USA
Civil Southeast, Inc., f/k/a Atlantic Skanska,
Inc.; FIREMAN'S FUND INSURANCE       Civil Action File
COMPANY, as subrogee of Skanska USA       No.: 1:09-CV-0666-RWS
Civil Southeast, Inc. f/k/a Atlantic Skanska,
Inc.; and SKANSKA USA CIVIL
SOUTHEAST, Inc., f/k/a ATLANTIC
SKANSKA, INC.,

        Plaintiffs,

v.

SHEFFER ENGINEERING COMPANY,
INC., and DANIEL B. SHEFFER, II,
Individually,

        Defendants.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendants Sheffer Engineering Company, Inc. ("Sheffer Engineering"),

and Daniel B. Sheffer, II, individually, file this Motion for Summary Judgment and

Incorporated Memorandum of Law in Support pursuant to Fed. R. Civ. P. 56 and

Local Rule 7.1.

## I.   SUMMARY OF THE ARGUMENT

This case arises out of the collapse of a dam on the Chattahoochee River during a construction project.  Sheffer Engineering designed a portion of the dam, and Dan Sheffer is an engineer employed by Sheffer Engineering.  Defendants are entitled to summary judgment on Plaintiffs' claims because there is no causal link between the allegedly defective design and the collapse of the dam since Plaintiff Skanska USA Civil Southeast ("Skanska") did not construct the cofferdam in accordance with Sheffer Engineering's design.   Instead, Skanska excavated approximately eight feet below the maximum depth allowed by the design, which proximately caused the collapse.

## II.   STATEMENT OF UNDISPUTED FACTS

Skanska hired Sheffer Engineering to design a protective system for a cofferdam[1] as part of a larger project to build a new pump station on the Chattahoochee River—the construction of which was led by Skanska.  (Doc. 14-2, ¶¶ 11, 12, & 15). The cofferdam consisted of metal sheets that were driven into the riverbed near the shoreline. Id. at ¶ 17.   The design provided by Sheffer Engineering supported the sheet piles and was made up of a vertical bar called a waler, which was support by several additional braces called rakers.  Id.   The

---

[1] "A cofferdam is a temporary structure that holds back water to allow construction in areas that would normally be below water."  (Doc. 14-2, ¶ 10).

rakers extended out at an approximate forty-five-degree angle into the ground where they were imbedded into concrete blocks called thrust blocks.  <u>Id.</u> at 18. The thrust blocks are, in turn, supported by the soil surrounding them. (Plaintiffs' Expert Report of Pete Craig, September 9, 2009, p. 3, attached as Exhibit A). The required degree of support depends on the extent of excavation around the protective system. (<u>See id.</u> at p. 4; Depo. Trans. Dan Sheffer, 28:11-25; 149: 7-12, attached as Exhibit B).  As set forth below, the extent of permissible excavation was clearly stated in Sheffer's design. (Exhibit C, August 14, 2007, design; Exhibit D, August 20, 2007, design; Exhibit E, September 27, 2007, design; Exhibit F, October 19, 2007, design). The cofferdam collapsed on November 9, 2007.  (Doc. 14-2 at ¶ 20).

Sheffer Engineering's design consisted of several iterations based on conditions encountered at the site.  (Ex.'s C, D, E, and F).  The first three iterations stated: "This document is valid on this particular project only, and to a maximum depth of 13.0 feet below the 874.00' M.S.L. water level."[2]  (Ex. C, D, & E).  In other words, this design allowed for excavation to a maximum depth of 859 mean sea level ("MSL"), or 15 feet below the flood stage of the river, which was 874

---

[2] The 13-foot figure in the design is actually a typographical error and should have read "15 feet," but the error actually makes the Sheffer Engineering design more restrictive.  (Depo. Trans. Sheffer, 69:11-13).

MSL.  (Depo. Trans. Sheffer, 66:23 – 67:11).  The final design document contains the same statement, but correctly identifies a maximum depth of 15.0 feet instead of 13.0 feet.  (Ex. F).  In the days before the collapse, however, Skanska had excavated well below the stated maximum depth to approximately 851 feet, which undermined the lateral soil support for the cofferdam and caused its collapse.  (Ex. A, pp. 4-5).  Until the excavation exceeded the 15 feet provided for by the design, the cofferdam functioned as intended.  (Id.).  The cofferdam did not fail until after the contractor deviated from Sheffer's design.

## III.   ARGUMENT

### A.   Defendants are Entitled to Summary Judgment Because Plaintiffs did not Construct the Cofferdam in Accordance with Defendants' Plans.

#### 1.   Plaintiffs' failure to construct the dam in accordance with the plans bars their negligence claim.

As set forth above, Skanska deviated from Sheffer's design by excavating 23 feet instead of 15 feet.  This excavation was 53% greater than that permitted by Sheffer's design, and it is undisputed that the cofferdam did not fail until the excavation exceeded the stated maximum depth of 15 feet.  It is undisputed that while the excavation was at the level permitted by the design, the cofferdam functioned as intended.  These undisputed facts clearly demonstrate that, as a

matter of law, the design could not have been the proximate cause of Plaintiffs' damages because the design was not followed.

Georgia law is clear that the required element of proximate cause cannot be established in a case of engineering malpractice when the contractor deviates from the design.  Under Georgia law, "[w]hen a case is based upon negligence of an architect or engineer in preparing plans, it is <u>essential</u> that the plaintiff prove that construction of the project designed was accomplished in compliance with the plans and specifications furnished by the defendant, at least with respect to that portion of the work claimed to be defective." <u>Covil v. Robert & Co. Assoc.</u>, 112 Ga. App. 163, 168, 144 S.E.2d 450, 455 (1965) (emphasis added). Thus, to prevail against Defendants, Plaintiffs must prove that the construction was accomplished in accordance with the plans and specifications, including the limitation on depth of excavation.

The setting in which the Georgia Court of Appeals established the principle set forth above makes clear that proving compliance with the design is, indeed, essential to establishing the liability of an engineer.  In <u>Covil</u>, the court was reviewing the grant of the defendant's motion for nonsuit and the denial of the defendant's motion to dismiss.  <u>Id.</u> at 166.  Whether a nonsuit is appropriate depended on the answer to a single question:  does the proof match the allegations

of the complaint?  The court reviewed the proof and the pleadings and determined that the trial court improperly granted nonsuit to the defendant because the plaintiff had pleaded and proved that the engineer's plans were negligent.  Id. at 167-68.

However, the Covil court noted that merely because the proof matches the pleadings does not mean that what the plaintiff pleaded (and proved) is sufficient to sustain a substantive cause of action. The motion to dismiss required consideration of whether the facts as pleaded stated a cause of action.  It was in this part of the decision that the Court of Appeals held that, notwithstanding the negligently-prepared plans, the plaintiff had not stated a claim because he had not pleaded that the plans were followed.  In other words, even assuming that plans had been negligently prepared, no recovery was possible under Georgia law where the contractor deviated from the plans.  Id. at 168-69.

The plaintiff in Covil pleaded that "construction of said repumping station was begun according to the plans and specifications prepared by the defendant." However, the Court of Appeals noted that the allegation did not establish that the construction was completed in accordance with the plans.  Accordingly, the Court of Appeals held that the pleading failed to state a claim even under the liberal motion to dismiss standard.  Id. at 169; see also Wheat Street Two, Inc. v. James C. Wise, Simpson, Aiken & Associates, Inc., 132 Ga.App. 548, 550, 208 S.E.2d 359,

362 (1974)(approving the following jury instruction:  "If you find that any water line about which the plaintiff complains was not actually located as provided in the plans and specifications, then plaintiff could not recover against defendant for alleged deficient design of such water line.  In order for an architect to be held liable for alleged negligent design, it must first be shown that the work claimed to be defective was constructed in accordance with the plans and specifications prepared by the architect").[3]

Here, it is undisputed that Skanska did not construct the cofferdam in accordance with Sheffer Engineering's design because Skanska excavated approximately eight feet below the maximum depth allowed by the design.  It was this additional excavation that undermined the design and caused the collapse. Consequently, Defendants cannot be liable for Plaintiffs' damages.

---

[3] In Wheat Street Two, the jury was required to determine whether there was, in fact, a deviation from the architectural plans.  However, if the jury determined that the contractor had deviated from the plans, the court correctly instructed under Georgia law that the jury was required to find in favor of the architect as a matter of law.  Here, it is undisputed that the plans were not followed and, therefore, there is nothing for a jury to resolve.  A judgment for Defendants is required as a matter of law.

2.   **Defendants are entitled to summary judgment on the breach of contract claim because it is based on the same alleged breach of duty.**

Because the duty underlying Plaintiffs' breach of contract claim is identical to their negligence claim, the argument above applies equally to that claim, and Defendants are entitled to summary judgment on the breach of contract claim as well.

Plaintiffs' negligence claim is based on four alleged breaches of duty, but the primary allegation is that Defendants failed "to use the requisite degree of professional engineering skill, diligence, and judgment in designing the cofferdam so as to avoid a catastrophic failure." (Complaint, ¶ 38). That same allegation is included in the breach of contract claim with one additional allegation: that Defendants failed "to design the cofferdam in a good, professional, workmanlike, and non-negligent manner." (Id. at ¶ 35). These two duties are one in the same, and both are imposed by law rather than contract. See Mauldin v. Sheffer, 113 Ga. App. 874, 150 S.E.2d 150 (1966) (explaining that in addition to any contractual duties, the law imposes upon professional engineers a duty to exercise a reasonable degree of care, skill, and ability as ordinarily exercised in similar conditions and under similar circumstances by similar professionals). Indeed, in this case, there is no written contract, so there are no express terms that impose anything other than

the common law duty. Thus, whether couched as a "breach of contract" or "negligence," the same proof is required for each claim, and because Skanska failed to follow Sheffer Engineering's design, Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim.

## VI.  CONCLUSION

Defendants are entitled to summary judgment because the cofferdam was not constructed in accordance with Sheffer Engineering's plans, and this deviation proximately caused the collapse.

WHEREFORE, Defendants respectfully request that the Court grant this motion, enter judgment in favor of Defendants and against Plaintiffs, and grant such other relief as the Court deems appropriate.

Respectfully submitted this 7th day of April, 2010.

> WEINBERG, WHEELER, HUDGINS,
> GUNN & DIAL, LLC
>
>
> s/ Stephen J. Rapp
> AMBER E. TUGGLE
> Georgia Bar No. 246719
> STEPHEN J. RAPP
> Georgia Bar No. 103806

Suite 3000, 950 East Paces Ferry Rd.
Atlanta, Georgia 30326
404-876-2700

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

s/ Stephen J. Rapp
STEPHEN J. RAPP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2010, I electronically filed the foregoing pleading via the CM/ECF system which will automatically send e-mail notification of such filing upon all parties to this matter:

Albert G. Dugan, Esq.
David M. Bessho, Esq.
COZEN O'CONNOR
303 Peachtree Street, N.E.
Atlanta, GA 30308

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

s/ Stephen J. Rapp
STEPHEN J. RAPP
Georgia Bar No. 103806

Suite 3000, 950 East Paces Ferry Rd.
Atlanta, Georgia 30326
404-876-2700                                    Attorneys for Defendants

869425 v.3