IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Skanska USA Civil Southeast, Inc. f/k/a Atlantic Skanska, Inc; FIREMAN'S FUND INSURANCE COMPANY, as subrogee of Skanska USA Civil Southeast, Inc. f/k/a Atlantic Skanska, Inc.; and SKANSKA USA CIVIL SOUTHEAST, Inc. f/k/a ATLANTIC SKANSKA, INC., <br><br>  Plaintiffs, <br><br> v. <br><br> SHEFFER ENGINEERING COMPANY, INC. and DANIEL B. SHEFFER, II, Individually, <br><br>  Defendants. | CIVIL ACTION NO. 1:09-CV-666-RWS |

## **ORDER**

This case comes before the Court on Defendants Sheffer Engineering Company, Inc. and Daniel B. Sheffer, II's Motion for Summary Judgment [29] and Motion for Leave to file a Motion for Judgment on the Pleadings [41]. After a review of the record, the Court enters the following Order.

AO 72A
(Rev.8/82)

## Background

This case arises from the November 9, 2007 failure of a cofferdam[1] installed on the Chattahoochee River near Norcross, Georgia. (Def.'s SMF, Dkt. [30] at ¶ 8). In 2007, Skanska hired Sheffer Engineering to design a protective system for a cofferdam as part of a larger project to build a new pump station. (Def.'s SMF, Dkt. [30] at ¶ 1; Pl.'s SMF, Dkt. [34] at ¶ 9). The cofferdam consisted of metal sheets that were driven into the riverbed near the shoreline. (Def.'s SMF, Dkt. [30] at ¶ 2). The design provided by Sheffer Engineering supported the sheet piles and was made up of a horizontal bar called a waler, which was supported by additional braces called rakers. (Id. at ¶ 3). The rakers were extended out at an approximate forty-five-degree angle into the ground where they were imbedded into concrete blocks called thrust blocks. (Id. at ¶ 4).

Upon Sheffer's retention, Skanska provided him with design plans and drawings showing "the whole excavation" and the "entire excavation profile" for the pump station. (Pl.'s SMF, Dkt. [34] at ¶ 12). These design drawings included drawing S-5, which showed that construction of the pump station

---

[1] "A cofferdam is a temporary structure that holds back water to allow construction in areas that would normally be below water." (Pl.'s SMF, Dkt. [34] at ¶ 1).

water intake chamber required excavating at a depth of approximately 850 feet mean sea level ("MSL"), which is 24 feet below the high river level of 874 MSL. (Id. at ¶ 16). In addition to providing Sheffer with the design plans, Skanska's Project Executive, Dave Hall, had conversations with Sheffer wherein they discussed the ultimate excavation depth for the pump station. (Id. at ¶ 13).

On August 14, 2007, Sheffer Engineering submitted its design drawing for the Cofferdam. (Def.'s SMF, Dkt. [30] at ¶ 7; Pl.'s SMF, Dkt. [34] at ¶ 18). This design set forth the extent of the permissible excavation. (Def.'s SMF, Dkt. [30] at ¶ 7). The plans showed a maximum excavation to a depth of 859 MSL, which is 15 feet below the river's flood stage level.[2] (Id. at ¶ 11; Pl.'s SMF, Dkt. [34] at ¶ 18). Plaintiffs assert that Sheffer was aware that the foundation for the project was going to be much deeper than the 859 foot elevation at the time he submitted his design. (Pl.'s SMF, Dkt. [34] at ¶ 21). Moreover, Skanska claims that it understood that the maximum excavation depth of 15 feet shown on Sheffer's design drawing to be limited *only* to the area of the "work

---

[2] In the first three design iterations, the maximum depth for excavation was listed as 13 feet. Plaintiffs and Defendants disagree as to whether the 13 feet was a typographical error. Regardless, the 13 foot figure makes the Sheffer Engineering design more restrictive. (Def.'s SMF, Dkt. [30] at ¶ 10; Pl's Resp. SMF, Dkt. [33] at ¶ 10).

3

bench."[3] (Id. at ¶ 22). Sheffer's design did not advise or warn Skanska that it could not excavate any deeper than 15 feet below the raker. (Id. at ¶ 24).

On September 27, 2007, Brad Jackson, Skanska's Project Manager, faxed Sheffer another copy of a drawing showing that construction of the pump station required excavating deeper than 15 feet behind the rakers and the work bench. (Id. at ¶ 27). In this same fax transmission, Mr. Jackson asked Sheffer "to go back and recheck his design to make sure it's adequate for what we need to do." (Id. at ¶ 28). Mr. Jackson indicated that he would not move forward with the installation until Sheffer reevaluated the design. (Id.). Upon receiving this transmission, Sheffer concluded that his design could be safely used and that Skanska could proceed with the installation. (Id. at ¶ 29). Subsequently, Skanska moved forward with the excavation.

Sheffer delivered a final design iteration to Skanska on October 19, 2007. (Id. at ¶ 46). The final design contained the following limitation: "this document is valid on this particular project only, and to a maximum depth of 15.0 feet below the 874.00 [MSL] water level," or 859 MSL (Df.'s SMF, Dkt. [30] at ¶¶ 10, 12).

---

[3] The work bench is the face of the cofferdam in the immediate area of the sheet pile wall directly on top of the rakers. (Pl.'s SMF, Dkt. [34] at ¶ 22).

The cofferdam collapsed on November 9, 2007. (Id. at ¶ 8). In the days before the collapse, Skanska excavated 8 feet below 859 MSL, which undermined the lateral soil support for the cofferdam and led to the collapse. (Id. at ¶ 13). Until the excavation exceeded the 15 feet depth provided in Sheffer's design, the cofferdam functioned as intended. (Id. at ¶ 14).

## Discussion

I.  **Motion for Summary Judgment**

   A.  Summary Judgement Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

5

2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not

6

significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted); <u>see</u> <u>also</u> <u>Matsushita</u>, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

    B.    <u>Negligence Claim</u>

Plaintiffs assert in Paragraph 31 of the Complaint that Defendants acted negligently by "failing to use the requisite degree of professional engineering skill, diligence, and judgment in designing the cofferdam." (Complaint, Dkt. [1] at ¶ 31). Given that Sheffer received drawing S-5, demonstrating Plaintiffs' intent to excavate deeper than 859 MSL, a question of fact exists as to whether Sheffer acted negligently in providing a design that did not meet Plaintiffs' expectations, and thus was subject to misinterpretation.

Defendant correctly states that Georgia law provides an affirmative defense to engineering negligence when a contractor deviates from an engineer's design plans during construction. <u>See</u> <u>Covil v. Robert & Co. Assoc.</u>, 112 Ga. App. 163, 168, 144 S.E.2d 450, 455 (1965); <u>Wheat St. Two, Inc. v. James C. Wise, Simpson, Aiken, & Assocs., Inc.</u>, 132 Ga. App. 548, 550, 208 S.E.2d 359, 362 (1974). However, in order for this defense to apply, the

AO 72A
(Rev.8/82)

design's specifications must be clear and definitive. Covil, 144 S.E.2d at 454. A defendant will not be absolved of liability if the design plans are ambiguous or subject to misinterpretation. Id.  In Covil, the Court of Appeals noted that a defendant is not absolved of liability even if the builder negligently interpreted plans and specifications because  the "defendant must be held to have anticipated the interpretation made by the builder whether or not that interpretation would constitute negligence on the builder's part." Id. Therefore, the relevant inquiry in this case is whether the final design plans submitted to Skanska on October 19, 2007 could be subject to misinterpretation and whether Sheffer could have anticipated Skanska's misinterpretation of the final design plans for the cofferdam.

     At the very least, there is a question of fact regarding whether Sheffer acted negligently in providing a design that failed to meet Skanska's requirements for the cofferdam. Skanska hired Sheffer to design a protective system that would allow Skanska to do what was necessary to build the entire pump station. (Pl.'s SMF, Dkt. [34] at ¶ 10). The evidence shows that Sheffer received a drawing for the pump station demonstrating that construction of the water intake chamber required excavating to a depth of at least 850 MSL. (Id. at ¶ 7). Despite this drawing, Sheffer's final plans restricted excavation to a

maximum depth of 859 MSL. (Def.'s SMF, Dkt. [30] at ¶ 12). After Sheffer submitted his first design iteration, Mr. Jackson specifically asked Sheffer "to go back and recheck [the] design to make sure it was adequate for what we need to do." (Id. at ¶ 28). Sheffer assured Jackson that his (Sheffer's) cofferdam design could be used safely and that that Skanska could proceed with the installation. (Id.). Subsequently, Skanska interpreted the design plans to allow for excavation below 859 MSL. (Def.'s SMF, Dkt. [30] at ¶ 13).

Defendants allege that Skanska's excavation to a depth of 851 MSL absolves them of liability because Skanska deviated from the limitation contained in the design plans. (Def.'s Memo, Dkt. [29] at pp. 4-7). Regardless of the express limitation that Sheffer's design only supported excavation to a maximun depth of 859 MSL, under the standard established in Covil, the relevant inquiry is whether Sheffer could have anticipated Skanska's misinterpretation of the design drawings. When he was initially retained to design the cofferdam, Sheffer admittedly received the design plans showing Skanska's intent for excavation to proceed to a depth of at least 850 MSL. Sheffer never warned Skanska that it could not excavate any deeper than 859 MSL and assured Skanska that his design could be "safely used," and that Skanska could "proceed with the installation." (Pl.'s SMF, Dkt. [34] at ¶ 29).

9

In light of Sheffer's knowledge of Skanska's needs and intentions with regard to the excavation, there is a genuine issue as to whether Sheffer acted negligently in providing a design that did not meet these requirements and whether he could have anticipated Skanska's misinterpretation. Therefore, summary judgment is not proper as to Plaintiffs' negligence claim.

    C.    Breach of Contract Claim

Plaintiffs further allege in Paragraph 28 of the Complaint that Defendants breached their contractual duty by "failing to design the cofferdam in a good, professional, workmanlike, and non-negligent manner" and by "failing to design the rakers … of the cofferdam so that they would terminate at a point below the lowest level of excavation for the pumping station project." (Complaint, Dkt. [1] at ¶ 28).

In the original design drawings provided to Sheffer by Skanska, Skanska described its intentions for the cofferdam. Specifically, drawing S-5 depicted Sheffer's intent that excavation of the water intake chamber proceed to a depth of at least 850 MSL, which is 24 feet below the high river level. (Pl.'s SMF, Dkt. [16] at ¶ 16). In the final design drawings, Sheffer produced a design that did not allow excavation to that depth, and instead allowed for excavation only to a depth of 859 MSL, or 15 feet below the high river level. As a result, there is

10

a question of fact as to whether Sheffer's final design, which diverged from drawing S-5, amounted to a breach of contract.

Georgia law states that "[a] contract is an agreement between two or more parties for the doing or not doing of some specified thing." O.C.G.A. § 13-1-1. While there is no written contract between Skanska and Sheffer for the design of the cofferdam, there does appear to be an agreement to do "some specified thing," that being the design of a cofferdam that would accommodate Skanska's broader construction goals. There is a question of fact as to whether the design produced by Sheffer was a breach of this agreement with Skanska, and therefore summary judgment is not proper as to Plaintiffs' contract claim.

Defendants' Motion for Summary Judgment [29] is **DENIED**.

## II. Motion for Leave to File Motion for Judgment on the Pleadings

Defendants request leave to file their Motion for Judgment on the Pleadings. (Def.'s Mo., Dkt. [41] at p. 1). They allege that they are entitled to Judgment on the Pleadings because Plaintiffs failed to file a supporting affidavit of an engineering expert with their Complaint and First Amended Complaint as required by O.C.G.A. § 9-11-9.1. (Id. at p. 2). Defendants cite Goolsby v. Gain, a recent Eleventh Circuit Court of Appeals decision, to support their claim that the affidavit requirement of O.C.G.A. § 9-11-9.1 may apply in a federal court

11

action based on diversity. (Def.'s Memo, Dkt. [41-1] at p. 4). However, this Court has consistently held that O.C.G.A. § 9-11-9.1 does not apply in federal court. See Larson v. Grayer, 2009 WL 4281100, *1 (N.D. Ga. Nov. 23, 2009); Chappell v. Kennestone Hospital, 2006 WL 2474094, *3 (N.D. Ga. Aug. 25, 2006); Denton v. United States, 2006 WL 358273, *2-3 (N.D. Ga. Feb. 15, 2006); Baird v. Celis, 41 F. Supp. 2d 1359 (N.D. Ga. 1999).  In a case decided after Goolsby, this Court stated that "a plaintiff alleging legal malpractice in a federal diversity action governed by Georgia law need not attach an expert affidavit to his complaint." Botes v. Steele, 2010 WL 1080752, *6 (N.D. Ga. Mar. 17, 2010). Instead, "the sufficiency of a plaintiff's complaint is judged by the standard set out in Federal Rule 8(a) which does not require the affidavit of an expert." Roberts v. Jones,  390 F. Supp. 2d 1333, 1337 (M.D. Ga. 2005). Because the affidavit requirement does not apply in this case, Defendant's proposed motion is futile.  Therefore, Defendants' Motion for Leave to file a Motion for Judgment on the Pleadings [41] is **DENIED**.

## Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment [29] is **DENIED** and Defendants' Motion for Leave to file a Motion for Judgment on the Pleadings [41] is **DENIED**.

12

AO 72A
(Rev.8/82)

**SO ORDERED**, this   31st   day of January, 2011.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE